UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIC JONES, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | 1:08-cv-1488-WTL-TAB |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of ) | |
| Social Security, ) | |
|     Defendant. ) | |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT SEEKING JUDICIAL REVIEW**

**I.    Introduction**

Eric Jones applied for disability insurance benefits and supplemental security income in May 2004, alleging that he has been disabled since March 31, 2003. [R. at 79, 346.] The Social Security Administration denied Jones's application initially and on reconsideration. [R. at 40–41, 48, 335–36, 340.] Administrative Law Judge Reinhardt Korte held a hearing on August 20, 2007, and denied Jones benefits in a decision dated September 24, 2007. [R. at 24, 385–87.] The Appeals Council denied Jones's request for review. [R. at 5.] Jones filed this action seeking judicial review. For the following reasons, the Magistrate Judge recommends that the ALJ's decision be reversed and this case be remanded for proceedings consistent with this entry.

**II.    Background**

In applying for benefits, Jones presented evidence of HIV infection, hepatitis C, cirrhosis of the liver, and borderline intellectual functioning. Jones testified at the administrative hearing, as did medical experts in clinical psychology and internal medicine. To determine whether Jones is disabled, the ALJ employed the five-step process set out at 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ determined that Jones had not engaged in substantial gainful activity since his alleged onset date.  [R. at 15.]  At step two, the ALJ found that Jones's HIV infection, hepatitis C infection, cirrhosis, and borderline intellectual functioning were severe impairments.  [*Id.*]  At step three, the ALJ determined that Jones does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  [R. at 16.]  The ALJ next determined Jones's residual functional capacity, which Jones does not challenge on review.  [R. at 22.]  At step four, the ALJ determined that Jones is unable to perform any past relevant work.  [*Id.*]  Finally, at step five, the ALJ considered Jones's age, education, work experience, and residual functional capacity and determined that there are jobs in significant numbers that Jones could perform.  [R. at 23.]  The ALJ concluded that Jones is not disabled.  [R. at 24.]

**III.    Discussion**

Jones raises two arguments on appeal, both challenging the ALJ's step three conclusion that Jones's serious impairments did not meet or equal a listed impairment.  First, Jones argues that he met Listing 14.08(D)(5) by virtue of medical expert testimony that Jones "literally" met that Listing's requirements.  [Docket No. 21 at 7.]  Second, Jones argues that he presented evidence that he equaled Listing 12.05(C), and the ALJ erred in not addressing that Listing.  [Docket No. 21 at 10.]

      *A.    Listing 14.08(D)(5)*

Jones first argues that the ALJ erred in failing to address medical expert testimony that Jones literally met Listing 14.08(D)(5) (HIV infection).  The version of Listing 14.08(D)(5) in effect at the time of the ALJ's decision required documented HIV infection plus hepatitis as

2

described under Listing 5.05. At the hearing, Jones's attorney, Steven Jacobs, questioned medical expert Dr. Julian Freeman about whether Jones met the criteria in Listing 5.05. Freeman testified that Jones did not meet Listing 5.05 because the record did not contain a measurement of prothrombin time.

> MR. JACOBS: Well, Dr. Freeman, I guess I need to ask this. Is it, is he—what is missing for the listing 5.05?
>
> DR. FREEMAN: . . . What is absent from the record is any measurement of the prothombin [sic] time.
>
> Q: Okay.
>
> A: And that's the problem.
>
> Q: So, basically, we don't know whether the prothombin [sic] time would be sufficient to make him meet the listing or not, do we?
>
> A: To meet the listing, two measurements, at least 3 months apart are required; however, based on the severity of the (INAUDIBLE) in his biopsy, I would consider the listing if only one were, were elevated.
>
> Q: But we don't even have that one?
>
> A: We don't even have that one.
>
> Q: So you can't say that he meets or equals?
>
> A: Correct.

[R. at 420–21.] Later, however, Dr. Freeman appeared to reach the opposite conclusion.

> DR. FREEMAN: [T]he problem is he does have hepatitis, but medically, the hepatitis would be considered unrelated to the HIV infection. All the other infections, B1 through 4, are infections that normally do not occur spontaneously, but are made much worse by the presence of the HIV infection. How B5 fits into that is unclear. *If one takes it literally, then there would be reason to say it would be met.* The

                                      problem is that the literal interpretation runs contrary to the usual medical interpretation of that.

* * *

| | |
|---|---|
| MR. JACOBS: | Okay.  So I guess I'm coming to this final question, are you saying he does not meet or equal that listing or he does meet or equal? |
| A: | I'm saying from a strict medical interpretation, he does not because there is no causal relationship between the Hepatitis and the HIV infection, but that a legal interpretation may differ. |
| Q: | Okay. |
| A: | *Because he does have Hepatitis, as described under the criteria of 5.05.* |

[Tr. at 422–24 (emphasis added).]  The ALJ's decision does not resolve this conflict.  Instead, the decision notes that "there remains no evidence of liver dysfunction demonstrated by repeated abnormalities of prothrombin time and enzymes" and concludes that Jones does not meet or medically equal Listing 5.05.  [R. at 16.]

       Jones argues that the ALJ erred in not considering Dr. Freeman's testimony that Jones met the Listing, stressing that an ALJ must evaluate evidence supporting Jones's disability claim.  [Docket No. 21 at 9.]  The Commissioner responds that "[w]hile these statements by the medical advisor may be somewhat ambiguous, there is no ambiguity to Dr. Freeman's prior statement that Plaintiff did not satisfy Listing 5.05 because the record did not document his prothrombin time."  [Docket No. 26 at 9.]

       The Commissioner's response is unpersuasive.  "[A]s with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade."  *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir.

2008). The ALJ's decision does not resolve the conflict between the two possible interpretations of Dr. Freeman's testimony. Therefore, remand is necessary to clarify Dr. Freeman's testimony. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (remanding because ALJ's decision failed to discuss conflicting evidence of claimant's impairments, including the strongest evidence supporting the claim for benefits); *see also Collins v. Astrue*, 324 Fed. App'x 516, 522 (7th Cir. 2009) (unpublished) (remanding because medical expert's testimony "point[ed] equally in opposite directions and therefore cannot serve as substantial evidence to support the ALJ's conclusions").

      *B.*      *Listing 12.05(C)*

Jones next argues that his impairments equal the requirements of Listing 12.05(C) (mental retardation) and that the ALJ erred in failing to address that Listing. It is true that the ALJ did not explicitly consider Listing 12.05(C). However, the ALJ mentioned the elements of Listing 12.05(C)—Jones's IQ, severe limitations, and daily functioning—and when considering Listing 12.02, he concluded that Jones did not meet or medically equal the requirements of Listing 12.02 "or any other listed impairment." [R. at 16.] Although the ALJ may well have already considered Listing 12.05, on remand, the ALJ may wish to utilize this opportunity to explicitly consider Jones's impairments under that Listing.

**IV.**    **Conclusion**

For the reasons set forth above, the Magistrate Judge recommends that the Commissioner's decision be reversed and this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this entry. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with

28 U.S.C. § 636(b)(1), and failure to file timely objections within the fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 01/29/2010

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Steven R. Jacobs
srjindy@aol.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Eric E. Schnaufer
eric@schnaufer.com